FILED

2016 Jan-14  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| ASHBURN FAMILY PROPERTIES, L.L.C., <br><br> Plaintiff, <br><br> vs. <br><br> EBR HUNTSVILLE, L.L.C.; EBL&S PROPERTY MANAGEMENT, INC.; AT HOME GROUP, INC.; and AT HOME STORES, L.L.C., <br><br> Defendants. | Civil Action No. 5:15-CV-650-CLS |

## MEMORANDUM OPINION AND ORDER

On December 11, 1969, James C. Ashburn and Margaret Ashburn leased approximately 9.5 acres of real property to Wiggins Alabama Properties, Inc. ("Wiggins").[1]  Under that lease, Wiggins was to develop the property for retail use and then sublease it to retail tenants.[2]  Wiggins "was required to use its best efforts to obtain subleases that provided for the payment of both minimum guaranteed rents and overage rents."[3]  MLP Associates, L.P., the entity that succeeded Wiggins as

---

[1] *See* doc. no. 46-4, at ECF 3, ¶ 1.

[2] Doc. no. 1-1 (Complaint) ¶¶ 12, 14.

[3] *Id.* ¶ 15.  Overage rents are "rents paid by a retail tenant in addition to the guaranteed minimum rent and are based upon a percentage of the tenant's sales." *Id.*

developer for the subject property, assigned the lease, and all duties thereunder, to

EBR Huntsville, L.L.C. ("EBR").[4]  EBL&S Property Management ("EBL&S") serves

as EBR's property manager and leasing agent.[5]

In or about November 2014, EBR, "through its leasing agent [EBL&S], entered

into a sublease agreement ('the Sublease') with the At Home Defendants [At Home

Group, Inc., and At Home Stores, L.L.C.]."[6]  Plaintiff Ashburn Family Properties,

L.L.C. ("Ashburn")[7] claims that EBR failed to employ its best efforts in negotiating

the sublease, as demonstrated by its failure to include a provision for the payment of

overage rents, by the At Home Defendants, to Ashburn.[8]  In other words, the sublease

only provides for the payment of *minimum guaranteed rents* to Ashburn.[9]  Ashburn

accordingly brought this action requesting a judgment declaring that both the lease

to EBR and the sublease to the At Home Defendants are void.[10]  Ashburn also seeks

---

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 18 (alterations supplied).

[7] Ashburn Family Properties, L.L.C., was formed in Madison County, Alabama on May 1, 2014.  Its registered agent is Christine Sampson Hinson, the personal representative of the estate of James C. Ashburn (the individual who leased the property to Wiggins in 1969).  *See* doc. no. 1-1 (Complaint), at 1, ¶ 1.  *See also Business Entity Details: Ashburn Family Properties LLC*, ALABAMA SECRETARY OF STATE (Accessed Dec. 7, 2015), http://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=308676&page=name&file=.

[8] Doc. no. 1-1 (Complaint) ¶ 19.

[9] *Id.* ¶ 20.

[10] *Id.* ¶¶ 25-26.

damages for breach of contract against EBR, for its failure to use its best efforts in negotiating the sublease with the At Home Defendants.[11]  The complaint, filed in the Circuit Court of Madison County, Alabama, named the following entities as defendants:  EBR Huntsville, L.L.C.; EBL&S Property Management, Inc.; At Home Group, Inc.; and At Home Stores, L.L.C.[12]

Defendants At Home Group, Inc. ("At Home Group") and At Home Stores, L.L.C. ("At Home Stores") filed a notice of removal on April 17, 2015, asserting jurisdiction on the basis of the parties' complete diversity of citizenship.[13]  *See* 28 U.S.C. §§ 1332(a), 1441(a)-(b).  EBR and EBL&S joined in the removal.[14]  Ashburn subsequently filed a motion to remand, arguing that the "Defendants . . . failed to prove complete diversity of citizenship . . . and . . . failed to comply with the procedural requirements for removal."[15]  In their initial notice of removal, defendants identified the citizenship of the limited liability company parties using the rules of citizenship for *corporations*, rather than those for limited liability companies. Plaintiff also sought remand on the basis that defendants had not included the entire

---

[11] *Id.* ¶¶ 30-31.

[12] *Id.* at 1.

[13] Doc. no. 1 (Notice of Removal), at 1.

[14] *Id.* ¶ 2.

[15] Doc. no. 18 (Motion to Remand), at 1 (ellipses supplied); *see* doc. no. 1, at 3-4; doc. no. 18 (Motion to Remand) ¶ 10.

state-court file with their notice of removal.

This court denied the motion to remand, finding that defendants had corrected the deficiencies in their initial notice of removal by properly establishing complete diversity of citizenship, and including the entire state-court file in their amended notice of removal.[16]

This action presently is before the court on the motion to dismiss filed by defendant At Home Group.[17]  At Home Group seeks dismissal of Ashburn's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.[18]  Upon consideration of the pleadings and briefs, this court concludes that the motion is due to be denied.

## I.  STANDARDS GOVERNING MOTIONS TO DISMISS UNDER RULE 12(b)(2)

The determination of personal jurisdiction over a nonresident defendant is a two-step analytical process.  First, a federal district court sitting in diversity must address the reach of the forum State's long-arm statute.  In that regard, the State of Alabama "permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the

---

[16] Doc. no. 24 (Memorandum Opinion and Order); *see* doc. no. 23-1 (Amended Notice of Removal).

[17] Doc. no. 9 (Motion to Dismiss).

[18] *See* doc. no. 1-1 (Complaint), at 4-5.

Constitution." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2).[19]  Second,

> [i]f there is a basis for the assertion of personal jurisdiction under the state statute, [the district court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alterations supplied, citations omitted).

The Eleventh Circuit discussed the two prongs of this inquiry in the following portions of its opinion in *Robinson*, *supra*:

1. Minimum contacts

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens, J. concurring in judgment).  This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the

---

[19] "An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . ." Ala. R. Civ. P. 4.2(b) (ellipsis supplied).

forum, *Keeton* [*v. Hustler Magazine, Inc.*], 465 U.S. [770], 774, 104 S. Ct. [1473], 1473 [79 L. Ed. 2d 790 (1984)], and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984)).

Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474, 105 S. Ct. at 2183; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).  However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . .  it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283, reh'g denied, 358 U.S. 858, 79 S. Ct. 10, 3 L. Ed. 2d 92 (1958). This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183, *Keeton*, 465 U.S. at 774, 104 S. Ct. at 1478, or because of the unilateral activity of a third person.  *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183; *Helicopteros*, 466 U.S. at 417, 104 S. Ct. at 1873.  Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state.  *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957)).  Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the

defendant's own purposeful acts will have some effect in the forum. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032-33, 94 L. Ed. 2d 92 (1987).

2.      Fair Play and Substantial Justice

Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (quoting *International Shoe Co.*, 326 U.S. at 320, 66 S. Ct. at 160). These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184; *World-Wide Volkswagen*, 444 U.S. at 292, 100 S. Ct. at 564. Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King*, 471 U.S. at 477-78, 105 S. Ct. at 2185. Conversely, these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id*. at 477, 105 S. Ct. at 2184.

*Robinson*, 74 F.3d at 258-59 (quoting *Madara v. Hall*, 916 F.2d 1510, 1516-17 (11th Cir. 1990) (footnote omitted)) (alterations supplied).

In considering a defendant's motion to dismiss for lack of personal jurisdiction, a district court

must accept as true all the allegations of the plaintiff's complaint, except

7

to the extent that the defendant presents evidence to contradict those allegations. If that occurs, then the burden shifts back to plaintiffs to "produce evidence supporting personal jurisdiction." *When the parties present conflicting evidence, the court must "construe all reasonable inferences in favor of the plaintiff."*

*Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1198 (N.D. Ala. 2012) (quoting

*Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360

(11th Cir. 2006)) (alteration and emphasis supplied).

A plaintiff opposing a motion to dismiss need not prevail by a preponderance of the evidence, but must simply produce enough evidence to withstand a motion for directed verdict. *Stubbs*, 447 F.3d at 1360 (citing *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002)); *see also Madara*, 916 F.2d at 1514 (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)) ("[T]he plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.") (alteration supplied).

## II. DISCUSSION

"There are two types of personal jurisdiction: specific and general. Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation." *Madara*, 916 F.2d

at 1516 n.7 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 nn. 8-9

(1984); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d

829, 857 n.41 (11th Cir. 1990); *Morris*, 843 F.2d at 491 n.2).

## A.    Specific Personal Jurisdiction

At Home Group states that "there is no specific jurisdiction over [it] because

it had no involvement in the lease or sublease at issue in this litigation."[20]  Plaintiff

contends that At Home Group *is* subject to specific jurisdiction because Judd

Nystrom, the Chief Financial Officer ("CFO") of both At Home Group and At Home

Stores, was a signatory to the sublease that forms the basis of this action.[21]  At Home

Group counters that Nystrom signed the lease solely in his capacity as CFO of Garden

Ridge, L.P., the corporate predecessor of *At Home Stores*.[22]

The sublease lists "EBR Huntsville, LLC" as the landlord of the rented

property, and "Garden Ridge, L.P." as the tenant.  Judd Nystrom testified that the

corporate predecessor of At Home Group was *GRD Holding — i.e.*, not *Garden*

---

[20] Doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 3 (alteration supplied).

[21] *See* doc. no. 46 (Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss), at 14, 17; doc. no. 45-3 (At Home Group's Interrogatory Answers), at ECF 7, ¶ 13 (stating that Nystrom is the CFO, Treasurer, and Assistant Secretary of both At Home Group and At Home Stores); doc. no. 1-8 (Sublease with signature of "Judd T. Nystrom CFO"), at ECF 47.

[22] *See* doc. no. 45-3 (At Home Group's Interrogatory Answers), at ECF 7 ¶ 13 (stating that Nystrom's "participation in the Sublease was purely as a representative of At Home Stores LLC, and not on behalf of At Home Group").

*Ridge, L.P.*[23]  He further testified that neither "At Home Group nor GRD Holding have ever been known as Garden Ridge Corporation, *Garden Ridge L.P.*, Garden Ridge Management, or Garden Ride Corporation."[24]

The court agrees that Judd Nystom's signature on the sublease would not, without more, render At Home Group (or its corporate predecessor) subject to specific personal jurisdiction in the State of Alabama.

Even so, At Home Group recently filed a consolidated financial statement with the Securities and Exchange Commission in anticipation of its $100,000,000 initial public offering of shares of common stock.[25]  (Such a document is commonly referred to as a "Form S-1.") The Form S-1 of *At Home Group, Inc.*,[26] states the following: "*Our* dedicated real estate team spends considerable time evaluating prospective sites before submitting a comprehensive approval package to *our real estate committee*, comprised of *our* Chief Executive Officer, *Chief Financial Officer*, and Chief Development Officer."[27]  Because Judd Nystrom, the Chief Financial Officer of both entities, is described as a member of the real estate committee of "At Home Group

---

[23] Doc. no. 34 (Nystrom Declaration), at ECF 10.

[24] *Id.* at ECF 10 (emphasis supplied).

[25] *See* doc. no. 45-2 (Form S-1).

[26] *See id.* at ECF 2.

[27] *Id.* at ECF 113 (emphasis supplied).

Inc. *and its consolidated subsidiaries*,"[28] it can be reasonably inferred that Nystrom signed the sublease while "wearing both hats" — that is, in his capacity as CFO of At Home Group, Inc., and of At Home Stores, L.L.C.

"When the parties present conflicting evidence, the court must 'construe all reasonable inferences in favor of the plaintiff.'" *Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1198 (N.D. Ala. 2012) (quoting *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)) (alteration and emphasis supplied).  Construing that reasonable inference in favor of plaintiff, this court finds that it possesses specific personal jurisdiction over defendant At Home Group, Inc., on the basis of the sublease transaction.

## B.   General Personal Jurisdiction

Alternatively, the court finds that it possesses general personal jurisdiction over defendant At Home Group, Inc.

At Home Group's motion to dismiss states that it "has no place in this lawsuit because it has insufficient contacts with Alabama to satisfy the requirements of Alabama's long-arm rule and the due process clause of the Fourteenth Amendment."[29] Specifically, At Home Group contends that it

---

[28] *See id.* at ECF 10 (denoting that references to "our" means "At Home Group Inc. *and* its consolidated subsidiaries") (emphasis supplied).

[29] Doc. no. 9 (Motion to Dismiss), at 2.

> does not have a registered agent in Alabama, and is not licensed to do business in Alabama.  It is a Delaware corporation having its principal place of business in New York.[30]  At Home Group does not:  market or sell goods or services or products in Alabama; own or lease real property in Alabama; have any interest in property in Alabama; maintain an office, business address or telephone listing in Alabama; have any Alabama-based shareholders; or have any employees in Alabama.  In other words, At Home Group has no contacts with the State of Alabama, much less the continuous and systematic contacts necessary to confer general personal jurisdiction.

Doc. no. 9 (Motion to Dismiss), at 5-6 (underscored emphasis in original, internal citations omitted) (citing doc. no. 9-1 (Declaration of Dean M. Zurmely) ¶¶ 2-4).  At Home Group adds that it is merely a *holding company*, "three levels removed" from At Home Stores, that

> holds stock for At Home Holding II Inc., which is a holding company that holds the stock for At Home Holding III Inc., which is a holding company that holds the stock for At Home Companies Inc., which is the sole member of At Home Stores LLC.

Doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 6 (citing doc. no. 45-3 (Interrogatories), at ECF 4; doc. no. 45-1 (Organizational Chart)).

The parties appear to agree that the status of At Home Group as a holding company for At Home Stores does not, by itself, render At Home Group subject to

---

[30] At Home Group's principal place of business is *not* New York.  Rather, it is Plano, Texas (the same principal place of business as At Home Stores).  *See* doc. no. 45-4 (Haislip Deposition), at 15-16, 23, 52; doc. no. 45-2 (Form S-1), at 1, 23.

general jurisdiction in the State of Alabama.[31]  *See Ex parte Unitrin, Inc.*, 920 So. 2d 557, 561 (Ala. 2005) ("Doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation.").

Further, At Home Group contends that there is no evidence that it exercises "such control [over At Home Stores] that [At Home Stores'] sole purpose for existence is to accomplish the aims of [At Home Group] and there is no evidence of separate interests."[32]  Plaintiff responds that sufficient overlap exists between the entities' management and financial interests to conclude that At Home Stores (which is unquestionably subject to general jurisdiction in the State of Alabama)[33] is merely the *alter ego* of At Home Group and, thus, At Home Group is also subject to general jurisdiction in Alabama.[34]

The Alabama Supreme Court has held that a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary, unless the

---

[31] *See* doc. no. 46 (Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss), at 4.

[32] Doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 3 (citing *Abramson v. The Walt Disney Company*, 132 F. App'x 273, 276 (11th Cir. 2005)) (alteration in brief).

[33] At Home Stores maintains three locations in Alabama: that, is, in Hoover, Irondale, and Huntsville.  *See Nippon Credit Bank, Ltd.v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (stating that "maintain[ing] an office or employees, solicit[ing] business, provid[ing] services or close sales, [or] sell[ing] or purchas[ing] products" in the forum are sufficient to satisfy the "continuous and systematic" contacts rule for general jurisdiction) (alterations supplied); *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1294 (11th Cir. 2000) (same).

[34] *See* doc. no. 46 (Plaintiff's Supplemental Response in Opposition to Motion to Dismiss), at 16.

parent so controls the subsidiary's operation as to make it a *mere adjunct, instrumentality, or alter ego* of the parent.   *Baker v. Hospital Corporation of America*, 432 So. 2d 1281 (Ala. 1983); *see also Ex parte British Steel Co.*, 426 So. 2d 409, 412 (Ala. 1982) (same).  In *Duff v. Southern Railway*, 496 So. 2d 760, 762 (Ala. 1986), that Court recognized the following factors as being probative of such control:

> (a) The parent corporation *owns all or most of the capital stock of the subsidiary*.

> (b) The parent and subsidiary corporations have *common directors or officers*.

> (c) The parent corporation finances the subsidiary.

> (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

> (e) The subsidiary has grossly inadequate capital.

> (f) *The parent corporation pays the salaries and other expenses or losses of the subsidiary*.

> (g) *The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation*.

> (h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or *its business or financial responsibility is referred to as the parent corporation's own*.

(i) The parent corporation *uses the property of the subsidiary as its own*.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but *take their orders from the parent corporation* . . . .

(k) The formal legal requirements of the subsidiary are not observed.

*Duff*, 496 So. 2d at 762-63 (citing *Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693, 704-05 (10th Cir. 1938); *Baker v. Raymond International, Inc.*, 656 F.2d 173 (5th Cir. 1981); *Garrett v. Southern Railway*, 173 F. Supp. 915 (E. D. Tenn. 1959)) (ellipsis in original).   The *Duff* Court remarked that "no one of these factors is dispositive; nor does the list exhaust the relevant factors."  *Duff*, 496 So. 2d at 763.

In addition to Alabama case law, plaintiff directs the court's attention to a case in which the Eleventh Circuit adopted, from the Fifth Circuit, a "laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent." *See United Steelworkers of America, AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1505 (11th Cir. 1988) (citing *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985)).  That list, which is very similar to that articulated by the Alabama Supreme Court, includes factors such as whether:

(1) the parent and the subsidiary have *common stock ownership*;

(2) the parent and the subsidiary have *common directors or officers*;

(3) the parent and the subsidiary have *common business departments*;

(4) the parent and the subsidiary file *consolidated financial statements* and tax returns;

(5) the parent finances the subsidiary;

(6) *the parent caused the incorporation of the subsidiary*;

(7) the subsidiary operates with grossly inadequate capital;

(8) the parent pays the salaries and other expenses of the subsidiary;

(9) *the subsidiary receives no business except that given to it by the parent*;

(10) *the parent uses the subsidiary's property as its own*;

(11) the daily operations of the two corporations are not kept separate; and

(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*Connors Steel Co.*, 855 F.2d at 1505 (emphasis supplied).

Several of the factors set forth by the Alabama Supreme Court and Eleventh Circuit favor plaintiff's position.  First, At Home Group and At Home Stores filed a consolidated financial statement (the Form S-1), which states that references therein to "the Company," "At Home," "we," and "us," mean "At Home Group Inc. *and its consolidated subsidiaries*."[35]

---

[35] Doc. no. 45-2 (Form S-1), at ECF 10 (emphasis supplied).

The Form S-1 speaks in terms of the centralized advertising and marketing strategies, common employees, and plans to open new stores and enter new markets of both At Home Group and its consolidated subsidiaries.[36]  The following excerpts from the Form S-1 illustrate the domination of At Home Group over At Home Stores:

- "All major decisions regarding merchandising, pricing, product assortment and allocation are *standardized* and *made centrally*. . . ."[37]

- "Our business model currently relies on *purchasing all inventory through our home office* in Plano, Texas."[38]

- "*We design our stores* as shoppable warehouses with wide aisles, an interior rare track and clear signage that enable customers to easily navigate the store."[39]

- "*We centralize major decisions* relating to merchandising, inventory and pricing in order to allow our in-store team to focus on creating a clean and organized shopping environment."[40]

- "*Overall store supervision* is managed by our Director of Store Operations and

---

[36] *See id.* at 10, 50, 74, 114.

[37] *Id.* at ECF 17, 83 (emphasis and ellipsis supplied).

[38] *Id.* at ECF 39 (emphasis supplied).

[39] *Id.* at ECF 111 (emphasis supplied).

[40] *Id.* at ECF 112 (emphasis supplied).

ten district managers."[41]

- "Our stores are typically open seven days a week *across the chain* with regular hours of 9 a.m. to 10 p.m. Monday through Saturday and 9 a.m. to 9 p.m. on Sunday."[42]

- "As of August 1, 2015, *we employed approximately 2,682 employees, including 2,461 store employees*. . . ."[43]

- "Our operations are conducted almost entirely through our subsidiaries, and our ability to generate cash to meet our obligations or to pay dividends, if any, is highly dependent on the earnings of, and receipt of funds from, our subsidiaries. . . ."[44]

Although At Home Group states that At Home Stores "develops its own pricing, marketing, advertising, and business strategy, without approval from At Home Group (or the requirement that At Home Group be even involved in the decision-making process),"[45] that contention is turned completely on its head by the foregoing statements of At Home Group in its Form S-1. Moreover, the court must

---

[41] Doc. no. 45-2 (Form S-1), at ECF 112 (emphasis supplied).

[42] *Id.* (emphasis supplied).

[43] *Id.* at ECF 116 (emphasis and ellipsis supplied).

[44] *Id.* at ECF 54 (ellipsis supplied).

[45] Doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 7 (citing doc. no. 45-5 (Declaration of Becky Haislip), ¶ 8).

construe all reasonable inferences in favor of the plaintiff.  *See Molex Co.*, 887 F. Supp. at 1198 (quoting *Stubbs*, 447 F.3d at1360).  And, it is more than reasonable to infer from At Home Group's statements regarding centralization and control in its Form S-1 that At Home Group and At Home Stores share a common business department.

Additionally, the parties agree that At Home Group and At Home Stores maintain common officers and directors (although they disagree about the *number* of common officers and directors).[46]  At Home Group contends that only four of the thirteen members of At Home Stores' management team are also representatives of At Home Group.[47]  Plaintiff contends that eight of the thirteen members of At Home Stores' management team are also representatives of At Home Group.[48]  As plaintiff points out, athome.com states that At Home's management team includes:

- Lee Bird, Chief Executive Officer & President
- Alissa Ahlman, Chief Merchandising Officer
- Mary Jane Broussard, General Counsel
- Peter Corsa, Chief Stores Officer
- Valerie Davisson, Chief People Officer
- Becky Haislip, Vice President, Corporate Controller
- Tina Laube, Vice President, Operations

---

[46] *See* doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 8; doc. no. 46 (Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss), at 13.

[47] Doc. no. 45 (At Home Group's Supplemental Brief in Support of Motion to Dismiss), at 9.

[48] *See* doc. no. 46 (Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss), at 14.

- Gary McClure, Chief Information Officer
- Norm McLeod, Chief Development Officer
- Judd Nystrom, Chief Financial Officer
- Kim Ramsey, Vice President, Inventory
- Jennifer Warren, Chief Marketing Officer
- Dean Zurmely, Vice President, Real Estate

Doc. no. 34 (At Home Webpage "Fact Sheet"), at ECF 17; *see also id.* (Declaration of Judd Nystrom), at ECF 10-11 (in which Mr. Nystrom asserts that "[t]he website athome.com is a website for At Home Stores, not At Home Group . . . . *The facts and content contained on the Website — including* on the "About Us" page and the *"Fact Sheet" — are about At Home Stores, not At Home Group*.") (alteration and italicized emphasis supplied).

Even so, the Form S-1 (signed on behalf of *At Home Group, Inc.*, by Judd T. Nystrom) states, "We maintain a website on the Internet at *www.athome.com*."[49] Further, the Form S-1 of At Home Group "identifies eight individuals as executive officers and seven individuals as non-employee directors."[50] Each of the eight individuals listed as executive officers in At Home Group, Inc.'s Form S-1 — *i.e.*, Lewis L. Bird, III; Judd T. Nystrom; Alissa M Ahlman; Mary Jane Broussard; Peter S.G. Corsa; Valerie L. Davisson; Norman E. McLeod; and Jennifer S. Warren — are also described on the athome.com webpage as members of At Home Stores'

---

[49] Doc. no. 45-2 (Form S-1), at ECF 23 (emphasis in original).

[50] Doc. no. 46 (Plaintiff's Supplemental Brief in Opposition to Motion to Dismiss), at 14.

management team.[51]  Therefore, it is reasonable to infer that over half of At Home Stores' management team consists of At Home Group's corporate officers.

Plaintiff provides other evidence that At Home Group is subject to general jurisdiction in the State of Alabama.  First, on August 20, 2015, a passage posted on the "About Us" website home page maintained by At Home stated, *"Owned and operated by At Home Group, Inc.*, we bring more than 30 years of passion and experience to the ever-evolving home decor category."[52]  Among the stores "owned and operated by At Home Group" are three stores in Alabama, respectively located in Irondale, Hoover, and Huntsville.[53]

If the foregoing evidence was insufficient to warrant the exercise of general jurisdiction over At Home Group, plaintiff alternatively moves this court to adopt the

---

[51] *See* doc. no. 45-2 (Form S-1), at ECF 117; doc. no. 34 (Declaration of Judd Nystrom), at ECF 10-11.  Plaintiff has also submitted the "Linked In" webpages of several persons listed in the text following footnote 50, which list "At Home Group, Inc." as each person's employer.  *See, e.g.*, doc. no. 46-6, at ECF 2 (Kim Ramsey); doc. no. 46-7, at ECF 2 (Tina Laube); doc. no. 46-8, at ECF 2 (Gary McClure); doc. no. 46-9, at ECF 2 (Lewis "Lee" Bird); doc. no. 46-10, at ECF 2 (Alissa Ahlman); doc. no. 46-11, at ECF 2 (Peter Corsa); doc. no. 46-12, at ECF 2 (Valerie Davisson); doc. no. 46-13, at ECF 2 (Norm McLeod); doc. no. 46-14, at ECF 2 (Judd Nystrom).

[52] Doc. no. 31 (Plaintiff's Response to Motion to Dismiss) ¶ 7 (citing doc. no. 31-1 (At Home Website "About Us" Page, accessed on August 20, 2015), at ECF 6).  The court notes that the phrase "Owned and operated by At Home Group, Inc." had been removed from the webpage as of September 16, 2015.

[53] *See* doc. no. 45-2 (Form S-1), at ECF 111, 215; *see also Store Locations*, ATHOME.COM (accessed Dec. 4, 2015), http://www.athome.com/on/demandware.store/Sites-athome-Site/default/Stores-FindByState?dwfrm_storelocator_stateUS=AL&dwfrm_storelocator_findbystate=Search.

"stream of commerce plus" test, as set forth by the Supreme Court in *Asahi Metal*

*Indus. Co., Ltd.v. Superior Court of Cal., Solano County*, 480 U.S. 102 (1987).[54]  In

*Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980), the Supreme

Court held that a forum State "does not exceed its powers under the Due Process

Clause if it asserts personal jurisdiction over a corporation that delivers its products

into the stream of commerce with the expectation that they will be purchased by

consumers in the forum State."  The Supreme Court elevated that standard in *Asahi*

(hence, the "stream of commerce *plus*" verbiage), when it stated the following:

> The placement of a product into the stream of commerce, without more,
> is not an act of the defendant purposefully directed toward the forum
> State.  *Additional conduct of the defendant* may indicate an intent or
> purpose to serve the market in the forum State, for example, . . .
> *advertising in the forum State* . . . .

*Asahi*, 480 U.S. at 112 (ellipsis and emphasis supplied).

In the present case, plaintiff contends that At Home Group not only claims to

introduce 50,000 products into the stream of commerce with each new store,[55] but

also advertises in the State using media such as billboards, newspapers, and radio.[56]

At Home Group also states, "We have demonstrated our ability to open stores

---

[54] Doc. no. 46 (Plaintiff's Supplemental Brief in Opposition of Motion to Dismiss), at 3.

[55] *See* doc. no. 45-2 (Form S-1), at ECF 13 ("[We offer] over 50,000 SKUs throughout our
stores.") (alteration supplied).  SKU stands for "stock keeping unit."

[56] Doc. no. 45-2 (Form S-1), at ECF 184.

successfully in a diverse range of new markets across the country, having entered 30 new markets [including Alabama] since 2011."[57]

Based upon all of the foregoing, the court finds that it can exercise general personal jurisdiction over At Home Group, either on the basis of At Home Group's *own* continuous and systematic contacts with the State of Alabama, or those of *At Home Stores*, which this court finds is the alter ego/mere instrumentality of At Home Group.

### III.  CONCLUSION AND ORDER

The court can exercise specific personal jurisdiction, or, alternatively, general personal jurisdiction, over At Home Group.  Accordingly, At Home Group's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED.  The stay of discovery on substantive issues is lifted.  At Home Group is ORDERED to answer the complaint within seven days.

DONE and ORDERED this 14th day of January, 2016.

United States District Judge

---

[57] Doc. no. 45-2 (Form S-1), at ECF 19 (alteration supplied).